IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PRIMESOURCE HEALTHCARE OF OHIO, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) No. 14 C 392 |
| KATHLEEN SEBELIUS, SECRETARY OF HEALTH AND HUMAN SERVICES, and CGS ADMINISTRATORS, LLC, | ) ) ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Judge:

On January 21, 2014, Plaintiff PrimeSource Healthcare of Ohio, Inc. ("PrimeSource") filed a three-count complaint (Dkt. No. 1, "Complaint" or "Compl.") against Defendants Kathleen Sebelius, in her role as Secretary of Health and Human Services ("the Secretary"), and CGS Administrators, LLC ("CGS") (collectively, "Defendants").

PrimeSource seeks a writ of mandamus compelling the Defendants to: (1) produce documents so it may begin the Medicare Appeals Process (Count I); (2) void six "prepayment screens" imposed by Defendants (Count II); and (3) provide PrimeSource with the evidence used as the basis for the prepayment screens (Count II). (Compl. ¶ 4.) PrimeSource also seeks damages arising out of Defendants' alleged continued violation of PrimeSource's procedural due process rights under the Constitution's Fifth Amendment (Count III). (*Id*. ¶¶ 47-48.)

Defendants have moved to dismiss (Dkt. No. 10, "Defs.' Mot.") all three counts alleged against them pursuant to Fed. R. Civ. P. 12(b)(1). For the reasons explained below, the

1

Defendants' motion is granted.

## BACKGROUND

Under the Medicare Act, 42 U.S.C § 1395 *et. seq*., an individual entitled to payment of Medicare benefit claims may assign this right to a physician. *Id.* §§ 1395u(b)(3)(B); 1395u(i)(1). In turn, that physician may reassign those payment rights to a medical supplier or provider. *Id.* § 1395u(b)(6). Those seeking benefits under the Medicare Act are collectively referred to as claimants. *Id.*

To administer paying Medicare claims, the Department of Health and Human Services ("HHS") contracts with companies that review, approve, and pay Medicare claims as the Secretary's agent (the "Contractor"). (Defs.' Mot. at 2.) The Contractor is required to issue an initial determination on a claim for benefits no later than 45 days after receiving the claim. 42 U.S.C. § 1395ff(a)(2)(A). Because of this narrow 45-day window between the filing of a claim and a Contractor's required determination, it is common for the Contractor to approve a claim initially. (Compl. ¶ 17.) The Contractor can then review the claim in more detail after payment in a post-payment review. (*Id*.)

If the Contractor discovers a claim should not have been paid in post-payment review, it may seek to recoup that overpayment. (*Id.*) The Contractor does so by issuing overpayment demand letters which set out what claims have been reviewed and disapproved. (*Id.*) These mistaken claims may also form the basis of prepayment screens. (*Id.* ¶ 19.)

According to the Medicare Program Integrity Manual, CMS Pub. 100-08, a Contractor may impose a prepayment screen on individual entities in the following circumstance. (*Id*. ¶ 1, 20 (citing Medicare Manual Ch. 3, §§ 3.2, 3.4).) After the Contractor conducts a series of post-payment reviews (an "Audit"), the Contractor discovers the claimant is submitting claims not

2

supported by Medicare regulation. (*Id.*) A prepayment screen prohibits a claimant from receiving any payment until each claim is reviewed and preapproved by the Contractor's reviewer. (*Id.* ¶ 20.)

Providers subject to prepayment review are required to submit supporting medical documentation for each claim affected by the screen. 42 U.S.C. 1395l(e). This is to verify that the services provided were appropriate, medically necessary, and not excessive. *Id.* The screen remains in place until the Contractor lifts it. (Compl. ¶ 20.)

PrimeSource provides podiatric services to Ohio nursing home patients. (*Id.* ¶ 2.) These patients have assigned their rights to payment of certain Medicare Part B benefits to six physicians. (*Id.*) The physicians have in turn re-assigned their rights to PrimeSource. (*Id.*) CGS is a Contractor for and duly-authorized agent of HHS. (*Id.* ¶ 3.) In this role, CGS reviews Medicare claims on behalf of HHS, determining whether to pay them and the amount to be paid. (Defs.' Mot. at 1.)

PrimeSource claims that CGS, and by extension the Secretary, has violated numerous Medicare regulations in processing the claims at issue in this suit. (Compl. ¶ 3.) Specifically, PrimeSource claims that CGS has placed six prepayment screens upon PrimeSource, and its affiliated physicians, without conducting the Audit required by Medicare regulations. (*Id.* ¶ 4b.)

Importantly to the case at bar, if a provider disagrees with the denial of a claim, the Medicare Appeals Process ("MAP") contains five specific, integrated phases by which a claimant may challenge that denial. (*Id.* ¶ 15.) Those phases are: (1) a redetermination, by the Contractor (utilizing staff that was not involved in making the initial claim determination); (2) a reconsideration, by a qualified independent contractor; (3) a hearing, by an Administrative Law

Judge; (4) an appeal, to the Medicare Appeals Council; and finally (5) judicial review, by a District Court Judge. 42 U.S.C. § 1395ff; 42 CFR 405, subpt. I.

Beginning in July 2013, CGS began a post-payment review of services performed by PrimeSource's six physicians. (Compl. ¶ 23.) Because of the error rate and the total number of purported overpayments Defendants discovered during the review, the Defendants informed PrimeSource via letter that claims for certain services would be subject to a prepayment screen. (*Id*. ¶ 23.) The above letter also indicated that if PrimeSource disagreed with the review's findings, it could appeal. (*Id.* ¶¶ 16, 23.) However, it also stated that PrimeSource could only do so within 120 days of receiving a series of overpayment demand letters, which would lay out the claims being rejected and could be used to begin the MAP. (*Id.*)

Although PrimeSource had not received the overpayment demand letters at the time of filing its complaint (*Id*. ¶ 16.), it has since received them. (Dkt. No. 16, "Pl.'s Oppn.", at 1.) However, PrimeSource maintains it still has not received all the claim information examined during Defendants' Audit and used to justify imposing the prepayment screens against PrimeSource (the "Probe Data"). (*Id.* at 1-6.) PrimeSource also alleges claims for services outside of those CGS specified in its letter have been delayed by the prepayment screen and that many more claims are being unduly delayed. (Compl. ¶¶ 33-34.)

PrimeSource, again, filed the Complaint in response, seeking a writ of mandamus to compel the Defendants to: (1) produce documents so it may begin the Medicare Appeals Process (Count I); (2) void six "prepayment screens" imposed by Defendants (Count II); and (3) provide PrimeSource with the evidence used as the basis for the prepayment screens (Count II). (Compl. ¶ 4.) PrimeSource also seeks damages arising out of Defendants' alleged continued violation of

PrimeSource's procedural due process rights under the Constitution's Fifth Amendment (Count III). (*Id.* ¶¶ 47-48.)

On April 9, 2014, Defendants subsequently filed their motion to dismiss for lack of subject matter jurisdiction. Defendants argue that this court lacks mandamus jurisdiction, because PrimeSource must first appeal the prepayment screen through the various MAP phases. (Defs.' Mot. at 6-9.) Defendants, additionally, claim that PrimeSource cannot state a claim for damages against the Secretary, nor CGS. (*Id.* at 11.)

## LEGAL STANDARD

**12(b)(1) Standard**

Motions to dismiss under Fed. R. Civ. P. 12(b)(1) are meant to test the sufficiency of the complaint, not to decide the merits of the case. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996). Rule 12(b)(1) requires dismissal of claims where a federal court lacks subject matter jurisdiction. Jurisdiction is the "power to decide" and must be conferred upon the federal court. *In re Chi. Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986).

In reviewing a Rule 12(b)(1) motion, the court may look beyond the complaint to other evidence submitted by the parties to determine whether subject matter jurisdiction exists. *See United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). A plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met. *See Kontos v. U.S. Dep't Labor*, 826 F.2d 573, 576 (7th Cir. 1987).

## ANALYSIS

**I. Count I: Request for Mandamus to Provide Overpayment Demand Letters**

As an initial matter, because Count I is moot, this court must dismiss Count I for lack of jurisdiction. Defendants have provided the documents PrimeSource requests in Count I, and the

parties agree Count I is moot. (Compl. ¶ 16; Pl.'s Oppn. at 1.)  Federal courts may adjudicate only actual, ongoing cases or controversies. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 473, 477 (1990). As a result, Count I is dismissed.

## II. Count II: Request for a Writ of Mandamus to Lift the Pre-Payment Screen of Claims and Compel the Production of "Probe Data"

This court generally has mandamus jurisdiction under 28 U.S.C. § 1361 ("§ 1361") over procedural claims arising under the Medicare Act, 42 U.S.C. § 1395 *et. seq*. However, in this case, the court does not have jurisdiction because PrimeSource has not, and cannot show, that it has exhausted all other remedies available to it. Although the plaintiff points to case law that appears to state otherwise, Seventh Circuit precedent conclusively demonstrates that PrimeSource's claim must proceed through the MAP phases, before this court may exercise jurisdiction under § 1361.

*A. The Mandamus Standard*

The Federal Mandamus and Venue Act, 28 U.S.C. § 1361 *et seq.*, provides that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." In the Seventh Circuit, the following three elements must be met in order to issue a writ of mandamus: "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; (3) no other adequate remedy available." *Burnett v Bowen*, 830 F.2d 731, 739 (7th Cir. 1987) (quoting *Homewood Prof'l Care Ctr., Ltd. v Heckler*, 764 F.2d 1242, 1251 (7th Cir. 1985)). The Supreme Court has placed particular emphasis on the third requirement, holding that "[t]he common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief." *Heckler v. Ringer*, 446 U.S. 602, 616 (1984)

6

(dismissing a mandamus claim against the Secretary of HHS for the denial of Medicare reimbursement for failing to exhaust administrative remedies).

Although 42 U.S.C. § 405(h) expressly precludes subject matter jurisdiction over claims arising under the Social Security Act, [1] the Supreme Court has not foreclosed the availability of federal mandamus jurisdiction. *See, e.g.*, *Heckler*, 466 U.S. at 616 ([a]ssuming without deciding that the third sentence of § 405(h) does not foreclose mandamus jurisdiction….). As a result of the Supreme Court's forbearance, a majority of circuits, including the Seventh Circuit, have found that mandamus relief is available for Medicare claims, but only for those claims that are procedural in nature. *See*, *e.g.*, *Michael Reese Hosp. and Medical Center v. Thompson*, 427 F.3d 436, 441 (7th Cir. 2005); *Burnett v. Bowen*, 830 F.2d 731 (7th Cir. 1987).

However, because the Supreme Court has recognized that mandamus relief is only available if a plaintiff "has exhausted all other avenues of relief", claims for mandamus relief arising under the Medicare Act must first proceed through the administrative steps of MAP. *Heckler*, 446 U.S. at 616; *Michael Reese Hosp.*, 427 F.3d at 441; *Burnett,* 830 F.2d at 740. Thus a provider must channel virtually all legal attacks through the Medicare's MAP process before it may bring its claim for judicial review. *Michael Reese Hosp.*, 427 F.3d at 441 (citing *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 19 (2000)).

B. *PrimeSource's Complaint*

Given the explanation above, the court agrees with PrimeSource that it does have jurisdiction under the mandamus statute to hear procedural claims that arise under the Medicare

---

[1] The Social Security Act at 42 U.S.C. § 405(h) provides that "no action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under [28 U.S.C.] § 1331 … to recover on any claim arising under the Social Security Act.

Act. However, before the court may exercise its mandamus jurisdiction, PrimeSource must demonstrate it has exhausted all other remedies, specifically the administrative steps of MAP.

PrimeSource claims there is no way for it to seek relief from the allegedly illegitimate prepayment screen that was implemented against it within MAP. (Pl.'s Oppn. at 10-11.) If true, PrimeSource's claim would fall within this court's mandamus jurisdiction. Thus, the primary question before the court is whether PrimeSource can seek relief for its claim via MAP. Seventh Circuit precedent suggests PrimeSource can and must first seek administrative relief within MAP.

*C. Seventh Circuit Precedent and Northern District Persuasive Authority*

The Seventh Circuit and courts in this district have repeatedly held that challenges to the manner in which Medicare contractors apply Medicare regulations can, and must, be appealed via MAP. *See, e.g.*, *Bodimetric Health Services, Inc. v. Aetna Life & Cas.*, 903 F.2d 480 (7th Cir. 1990) (finding a claim for the misapplication of Medicare regulations outside its subject matter jurisdiction for lack of exhaustion); *Center for Dermatology and Skin Cancer, Ltd. v. Sebelius,* No. 13-4926, 2014 WL 1245257, at *3 (N.D. Ill. Mar. 26, 2014) (Aspen, J.) (same); *Columbus Park Nursing and Rehabilitation Center v. Sebelius*, 940 F.Supp.2d 805, 814-18 (N.D. Ill. 2013) (Feinerman, J.) (same).

In *Bodimetric*, the Seventh Circuit noted that in cases in which a Medicare regulation itself deprived an entity of its right to due process, the federal courts had jurisdiction. 903 F.2d at 485. However, the court held federal jurisdiction was lacking where the plaintiff merely alleged that a Contractor had misapplied those regulations. *Id.*

The plaintiffs in *Bodimetric*, additionally, argued that the Court had jurisdiction over non-Medicare claims arising from the Medicare regulation misapplications, such as fraud, breach of

contract, *etc*. *Id.* at 468. They argued that the court had jurisdiction because MAP did not provide the ability to adjudicate such non-Medicare claims. *Id.* at 468. Unpersuaded, the Seventh Circuit found that this did not prevent the plaintiffs from seeking relief within MAP, where the underlying facts of the non-Medicare claims could be raised in the administrative process. *Id.*

Because Bodimetric could seek review of the administrator's denials through the MAP, the court reasoned, an administrative law judge ("ALJ") could provide relief via the reversal of denied claims. *Id.* The court held it was not dispositive that the ALJ could consider substantively different issues than a state or federal judge reviewing a tort or contract claim. *Id.* The court further pointed out "that if litigants who have been denied benefits could routinely obtain judicial review of these decisions by characterizing their claims under state and federal causes of action, the Medicare Act's goal of limited judicial review for a substantial number of claims would be severely limited." *Id.* (citations omitted).

The case at bar presents an analogous situation. Like the plaintiff in *Bodimetric*, PrimeSource claims that Defendants have violated rights other than those granted by the Medicare Act, specifically its constitutional right to due process. (Compl. ¶ 31.) *Bodimetric* makes it clear, however, that these kind of claims can be brought within MAP to support overturning a Contractor's denial of claims. Thus, like the plaintiff in *Bodimetric*, PrimeSource can and must bring its claim, including the alleged constitutional violations, through MAP first before bringing a claim in this court.

In the well-reasoned *Center for Dermatology* opinion, former Chief Judge Marvin Aspen also provides persuasive authority for this courts holding. There, the plaintiff sought mandamus relief, claiming that the defendants had failed to process approximately 2,300 of his Medicare

reimbursement claims. 2014 WL 1245257, at *1. Because plaintiff had not exhausted MAP for any of his claims, the court held it did not have to consider whether the plaintiff had presented a procedural claim, over which the court could exercise mandamus jurisdiction. *Id.* at *3. Having found that the plaintiff had not met the exhaustion requirement of mandamus jurisdiction, the court held it lacked subject matter jurisdiction. *Id.*

PrimeSource has claimed that Defendants violated PrimeSource's due process rights, but at bottom its request is one for the processing and payment of benefit claims as in *Center for Dermatology*. (Compl. ¶¶ 28-36.) In such an instance, this court is persuaded by *Center for Dermatology*'s well-reasoned holding that until a claim has been pursued completely through MAP, it cannot meet the third element—the exhaustion of all other remedies—of mandamus jurisdiction.

D. *Availability of Administrative Relief: The Sixth Circuit*

*Farkas v. Blue Cross & Blue Shield of Michigan*, 24 F.3d 853 (6th Cir. 1994) provides additional, directly on-point persuasive authority that PrimeSource has an administrative remedy precluding mandamus jurisdiction. In *Farkas*, the plaintiff physician alleged that he had been placed on prepayment review in retaliation for filing suit against the Medicare contractor reviewing his claims. *Id.* at 854. One of the primary questions before the Sixth Circuit was whether or not Dr. Farkas had to exhaust the administrative phases of MAP. *Id.* at 859-860.

In finding against Dr. Farkas, the Sixth Circuit held that he could challenge the Medicare contractor's decision to place him on prepayment review within MAP. *Id.* at 860. The court reasoned that Dr. Farkas could challenge the prepayment screen, by disputing Medicare claims declined for failure to provide additional information required under the allegedly improper prepayment screen. *Id.* at 860-61. While challenging the basis upon which these claims were

denied, Dr. Farkas could challenge the validity of the prepayment screen itself and therefore get relief. *Id.*

### E. PrimeSource's Rebuttals

PrimeSource nevertheless maintains that it has no other remedy but this lawsuit and that this court has mandamus jurisdiction. To support its claim that MAP offers no possibility of relief, PrimeSource points to *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757 (5th Cir. 2011). In *Wolcott*, the Fifth Circuit stated that the plaintiff had pled a claim upon which the court could have compelled the defendant to remove plaintiff Wolcott from prepayment review. *Id.* at 773. The claim at issue alleged that:

> (1) the defendants had a clear nondiscretionary duty to remove Wolcott from prepayment review after one year; (2) Wolcott has a clear right to be removed from prepayment review denials and to receive a reversal for all claims denied on prepayment review that were made after the allowed year; and (3) ***there is no adequate remedy available to challenge the defendant's action in keeping Wolcott on prepayment review longer than legally allowed***.

*Id.* (emphasis added).

Though on initial review *Wolcott* appears to support PrimeSource's position, it is sufficiently distinguishable from this case. This court, first, notes that the Fifth Circuit did not explain why it believed that Wolcott had no adequate remedy within the administrative process. Setting that issue aside, the portion of *Wolcott* that PrimeSource relies is also *dicta*. The Fifth Circuit had already dismissed the relevant claim for mootness, because plaintiff had been taken off prepayment review before reaching the court. *Id.* The *Wolcott* plaintiff, additionally, had a stronger argument for exhaustion, because he had already successfully appealed a number of claims through MAP. *Id.*

PrimeSource also complains at various points about continuing delays in having its claims processed during the MAP proceedings. However, former Chief Judge Aspen has made it

11

clear that suffering delay during Medicare claim processing is not equivalent to relief through administrative review being impossible. *Center for Dermatology*, 2014 WL 1245257, at *3 (citing *Heckler*, 366 U.S. at 619 ("[a]lthough respondents would clearly prefer an immediate appeal to the District Court . . . exhaustion of administrative remedies is in no sense futile.")).

      *F. PrimeSource's Request for Documents Within Count II*

The court now turns quickly to PrimeSource's request for a writ of mandamus to compel additional documents on the Audit conducted prior to CGS' imposing a prepayment screen. Because the claim this document request rests upon must be brought through the MAP process, this court is not the proper forum to dispute the Government's production obligations. As laid out in the Medicare Act itself:

> Upon the filing of a complaint by an aggrieved party, such a[n] [initial] determination shall be reviewed by an administrative law judge. The administrative law judge—***shall review the record and shall permit discovery and the taking of evidence to evaluate the reasonableness of the [initial] determination***, if the administrative law judge determines that the record is incomplete or lacks adequate information to support the validity of the determination . . . .

42 U.S.C. § 1395ff(f)(2)(A) (emphasis added). Given that the Medicare Act contains an explicit procedure where PrimeSource may seek its desired discovery in MAP, this court refrains from interjecting itself into the potential administrative proceedings.

**III. Count III: PrimeSource's Request for Damages**

Because Count III is moot, it must be dismissed for a lack of jurisdiction. Counts I and II underlie Count III, and the former counts have been dismissed for mootness and a lack of subject matter jurisdiction. Count III, consequently, is moot as it lacks an underlying basis. Federal courts may adjudicate only actual, ongoing cases or controversies. *Lewis*, 494 U.S. at 477. As a result, Count III is dismissed for lack of subject matter jurisdiction.

## **CONCLUSION**

For the reasons set above, Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b) (1) (Dkt. No. 10) is granted. PrimeSource and the Defendants agree that Count I is moot. For Count II, PrimeSource can seek relief via the Medicare administrative review process. Because this administrative remedy is available, this court lacks subject matter jurisdiction even under its mandamus jurisdiction. Finally, because Count I is moot and the court lacks subject matter jurisdiction over Count II, there is no underlying claim for which the Court could grant PrimeSource's request for damages in Count III. Civil Case Terminated.

ENTER:

_____
JAMES F. HOLDERMAN
United States District Judge

Date: July 9, 2014